**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on July 11, 2008, which may be different from its entry on the record.**

**IT IS SO ORDERED.**



**Dated: July 11, 2008**

**Arthur I. Harris**
**United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
### NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Case No. 06-14882 |
| | ) | |
| GARY CUNNINGHAM, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Proceeding 07-01146 |
| _____ | ) | |
| | ) | Judge Arthur I. Harris |
| BRIAN BASH, CHAPTER 7 TRUSTEE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| GARY CUNNINGHAM, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM OF OPINION[1]

On April 3, 2007, the Chapter 7 trustee, Brian Bash, filed the above-

captioned adversary proceeding seeking: (1) a judicial declaration of a resulting

---

[1] This opinion is not intended for official publication.

trust with respect to real property located at 36393 Grafton Eastern Road in Grafton, Ohio, and a 2005 Dodge truck (Counts I and V); (2) a determination that the debtor's (a) deposits into a FirstMerit checking account, and (b) transfer of title to a 2005 Dodge truck to defendant Gordon Wyman, are fraudulent transfers subject to avoidance under the Bankruptcy Code (Counts II, III, and IV); (3) a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A) (Counts VII and VIII); (4) a determination of all of the defendants' interests in the Grafton property and/or the Dodge truck (Count VI); and (5) a judicial declaration that the Grafton property and the Dodge truck are subject to sale pursuant to 11 U.S.C. §§ 363(b) and (f) (Count IX).

For the reasons that follow the Court finds: (1) a purchase-money resulting trust in favor of the debtor has been established with respect to the Grafton property; (2) the debtor's transfer of ownership of the 2005 Dodge truck to Gordon Wyman is a fraudulent conveyance subject to avoidance under 11 U.S.C. §§ 544 and 548; (3) the trustee's requests for denial of discharge are denied; (4) the Grafton property and Dodge truck are property of the bankrupt estate, and are subject to administration by the Chapter 7 trustee; and (5) the trustee's request for authority to sell the Grafton property and the Dodge truck is granted pursuant to 11 U.S.C. § 363(b).

## PROCEDURAL HISTORY

On October 12, 2006, the debtor, Gary Cunningham, filed a petition under Chapter 7 of the Bankruptcy Code. Creditor Carol Cunningham filed proof of an unsecured priority claim in the amount of $218,644.00. On January 29, 2007, the Court issued an order of discharge. On April 3, 2007, the plaintiff initiated the above-captioned adversary proceeding against defendants: Gary Cunningham, Guy Cunningham, Ann Cunningham, and Gordon Wyman. All defendants answered plaintiff's complaint. On January 18, 2008, the parties agreed that, in lieu of a trial, this matter would be submitted to the Court on the parties' briefs, as well as on certain stipulated facts and exhibits identified on the record that same day. The Court ordered all supplemental briefs and the docket from the state court action to be filed by January 25, 2008. On January 25, 2008, the plaintiff and debtor-defendant filed supplemental briefs. The debtor filed the docket from the state court action on February 6, 2008. The case was deemed heard and submitted at that time, and the Court is now ready to rule.

## STIPULATED FACTS

### *Real Property*

The following stipulated facts are undisputed by the plaintiff, Brian Bash, and defendants, Gary Cunningham, Guy Cunningham, and Ann Cunningham. On

3

August 13, 1992, the debtor, Gary Cunningham, purchased real property located at 36393 Grafton Eastern Road. The debtor instructed the previous owners to transfer the property to the debtor's son, Guy Cunningham, by way of a warranty deed. On October 15, 1992, Guy Cunningham transferred the Grafton property to the debtor pursuant to a warranty deed. On December 6, 1993, the same day the debtor filed for divorce from his wife Carol Cunningham, the debtor transferred the property back to his son. On January 31, 1997, the domestic relations court issued a certificate of judgment in the divorce proceeding. According to the Clerk's Certificate of Judgment attached to Carol Cunningham's proof of claim, the court awarded $113,214.00 in favor of Carol Cunningham and against the debtor, at a 10% rate of interest from the date of judgment.

Although legal title to the property is in Guy Cunningham's name, the debtor currently resides at the Grafton property. The debtor has resided at the property since 1992, with Guy Cunningham's full knowledge. Since the property was purchased in 1992, the debtor has: (1) paid all real estate taxes, (2) paid all property insurance premiums, (3) leased the property to third parties, (4) collected all rental income from such leases, and (5) submitted all Current Agricultural Use Valuation applications in connection with the property. Further, neither Guy, nor Ann Cunningham, has ever claimed the property as an asset. Guy Cunningham has

4

stipulated that the debtor's rights in the property will continue as long as the debtor lives.

On June 30, 2000, creditor Carol Cunningham (not a party to this adversary proceeding) filed a complaint against the debtor alleging that the transfer of the property from the debtor to Guy Cunningham was a fraudulent conveyance subject to avoidance under state law (Lorain County Court of Common Pleas Case No. 00CV126187). The Common Pleas Court granted summary judgment in favor of the debtor on the grounds that the fraudulent conveyance action was barred by the applicable statute of limitations. On appeal, the trial court's ruling was upheld.

*Checking Account*

The following stipulated facts are undisputed by the plaintiff, Brian Bash, and defendants, Gary Cunningham, Guy Cunningham, and Ann Cunningham. On January 24, 1995, the debtor opened a PremierBank and Trust checking account in the name of Guy Cunningham. The bank name was later changed to FirstMerit Bank. All relevant checks issued by the debtor were FirstMerit checks. On August 23, 2006, a check in the sum of $46,000 was drawn on the account payable to "cash," and was endorsed and negotiated by the debtor.

Defendant Guy Cunningham claims that he had no knowledge that the debtor opened a checking account in his name, and only became aware of the

5

existence of the account in September 2006. The debtor does not stipulate to the assertions made by Guy concerning Guy's awareness of the account. The debtor claims that he opened the account with Guy's full knowledge.

*2005 Dodge Truck*

The following stipulated facts are undisputed by the plaintiff, Brian Bash, and defendants, Gary Cunningham, and Gordon Wyman. The Bureau of Motor Vehicles issued a registration card to the debtor on February 1, 2006, for a 1998 Chevy Silverado truck, VIN #1GCHC33F6WF061323. The debtor maintained insurance on the Chevy truck from September 2003 to April 2006. The debtor listed himself as the only driver on the insurance application. On April 13, 2006, a 1998 Chevy truck with the same VIN # was used as a trade-in vehicle for the purchase of a 2005 Dodge Ram at Strongsville Dodge. Gordon Wyman, the debtor's brother, signed the purchase contract for the Dodge truck. The balance of the sale price for the Dodge, $12,781.75, was paid with a check drawn on the FirstMerit checking account and signed by the debtor. Title to the Dodge was issued to Gordon Wyman. Since the purchase of the Dodge, the debtor has paid for the insurance, and has been named as the insured on all policies. Further, all the policies have indicated that the truck is garaged at the Grafton property.

## JURISDICTION

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (E), (H), (J), and (N). The Court has jurisdiction over core proceedings under 28 U.S.C. §§ 1334 and 157(a) and Local General Order No. 84, entered on July 16, 1984, by the United States District Court for the Northern District of Ohio.

## DISCUSSION

### *Resulting Trust: Counts I and V*

The Chapter 7 trustee argues that the debtor holds an equitable interest in the Grafton property and the 2005 Dodge truck by virtue of two resulting trusts. The trustee claims that, under 11 U.S.C. § 541(a)(1), a debtor's equitable interests in property become property of the estate at the commencement of the case. The debtor contends that the Grafton property and the Dodge truck are not assets of the estate, and that the Court may not impose a resulting trust because the Grafton property was a gift to the debtor's son, and the debtor's brother provided consideration for a one-half interest in the truck.

Upon commencement of a bankruptcy case, all property of the debtor comes into the bankrupt estate, regardless of whether the interest in such property is legal or equitable. 11 U.S.C. § 541; *see Rousey v. Jacoway*, 544 U.S. 320, 325 (2005) ("As a general matter, upon the filing of a petition for bankruptcy, 'all legal or

7

equitable interests of the debtor in property' become the property of the bankruptcy estate and will be distributed to the debtor's creditors."); *Triad International Maintenance Corp. v. Southern Air Transport, Inc. (In re Southern Air Transport, Inc.)*, 511 F.3d 526, 533 (6th Cir. 2007) (Bankruptcy Code's definition of property of the estate "is very broad"). State law determines the nature and extent of a debtor's interest in property. *See Butner v. United States*, 440 U.S. 48, 55 (1979); *accord Travelers Casualty & Surety Co. v. Pacific Gas & Electric Co.*, __ U.S. __, 127 S.Ct. 1199, 1205 (2007) ("As we stated in *Butner*, '[p]roperty interests are created and defined by state law,' and '[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding.' "). It is undisputed that Ohio law governs the property interests at issue in this case.[2]

_____

[2] In making the choice of law determination, it is immaterial whether the Court first looks to federal common law or to the law of the forum state because both paths lead to the Restatement (Second) of Conflicts of Law. *Compare Medical Mut. of Ohio v. De Sota,* 245 F.3d 561, 570 (6th Cir. 2001) (adopting Restatement (Second) of Conflicts of Law under federal common law), *with Morgan v. Biro Manufacturing Co.*, 474 N.E.2d 286 (Ohio 1984) (adopting the Restatement (Second) of Conflicts of Law under Ohio law); *See also Bear Stearns Gov't Sec., Inc. v. Dow Corning Corp.* (*In re Dow Corning Corp.*), 419 F.3d 543, 548 (6th Cir. 2005) (briefly discussing the circuit split regarding the use of federal choice-of-law principles versus the forum state's choice-of-law principles when a federal court exercises bankruptcy jurisdiction). Section 223 of the Restatement

One role of the bankruptcy trustee is to represent the rights of the debtor in bringing property into the estate. *See In re Dow*, 132 B.R. 853, 861 (Bankr. S.D. Ohio 1991). Under 11 U.S.C. §§ 541 and 704(a)(1), "the trustee stands in the debtor's shoes and thereby is empowered to pursue property and causes of action of the debtor." *Id*. Thus, although the debtor is repudiating his purported equitable interest in the property, if the Grafton property or the Dodge truck is the debtor's property pursuant to a resulting trust, the trustee may stand in the debtor's shoes to pursue property of the estate for the benefit of creditors.

The Ohio Supreme Court defines a resulting trust "as one which the court of equity declares to exist where the legal estate in property is transferred or acquired by one under facts and circumstances which indicate that the beneficial interest is not intended to be enjoyed by the holder of the legal title." *First Natl. Bank of Cincinnati v. Tenney,* 138 N.E.2d 15, 17 (Ohio 1956). The intent of the parties is

_____

provides:

> (1) Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs.
> (2) These courts would usually apply their own local law in determining such questions.

Restatement (Second) of Conflicts of Law § 223. Accordingly, because the real property in question is located in Ohio, the Court will apply Ohio law in determining whether a resulting trust exists for the benefit of the estate. Similarly, Ohio law governs whether a resulting trust exists for a vehicle purchased and titled in Ohio.

9

the determining factor.  *See John Deere Industrial Equip. Co. v. Gentile*, 459 N.E.2d 611, 616 (Ohio Ct. App. 1983).  One of the most common types of resulting trust is a purchase-money resulting trust.  "A purchase-money resulting trust arises where title to property is transferred to one person, but the purchase price is paid by another."  *Brate v. Hurt*, 880 N.E.2d 980, 986 (Ohio Ct. App. 2007) (citations omitted).  A purchase-money resulting trust gives rise to an inference that the payor did not intend the transferee to take a beneficial interest in the property.  *See Id*.  Rather, the property is considered to be held in trust by the transferee for the benefit of the payor.  *See* Restatement (Third) of Trusts § 9 (2003).[3]

When the conveyance is made by the payor to a "natural object of the bounty" of the payor, there is no inference of a resulting trust.  Restatement (Third) of Trusts § 9 (2003).  Instead, where the transferee is a family member of the payor there is a presumption of a gift, and the transferee will be viewed to have both legal and equitable title to the property.  *See John Deere Industrial Equip. Co.,*

---

[3] Recent decisions by the Ohio Supreme Court have either favorably cited or expressly adopted the Restatement on Trusts on issues involving resulting trusts and other trust concepts.  *See Stevens v. Radey*, 881 N.E.2d 855, 859 (Ohio 2008) (citing Restatement (Second) of Trusts § 430 (2001)); *Pack v. Osborn*, 881 N.E.2d 237, 241, 243 (Ohio 2008).  Therefore, the Court believes that the Restatement of Trusts constitutes an authoritative statement of Ohio law regarding resulting trust issues that the Ohio Supreme Court has not directly addressed in its decisions.

10

459 N.E.2d at 616 (conveyance from a parent to a child is presumed to be a gift, unless overcome by other evidence). However, the presumption may be rebutted by evidence showing that the payor intended to retain equitable title to the property.

> The conduct of the payor and the transferee before or after the transfer . . . may be such as to show that at the time of the transfer the payor did not intend to make a gift to the transferee. Thus, the fact that the payor manages the property or directs its management, collects rents, pays taxes and insurance premiums, pays for repairs and improvements, or otherwise acts as an owner would act, especially with the transferee's acquiescence, is evidence that tends to rebut a presumption that the payor intended to make a gift to the transferee.

Restatement (Third) of Trusts § 9, Comment c (2003); *see Brate*, 880 N.E.2d at 986 (presumption of a gift may be overcome with clear and convincing circumstantial evidence showing payor intended to retain a beneficial interest in the property); *In re Clemens*, 472 F.2d 939, 943 (6th Cir. 1972) (same, applying Ohio law).

A. *Grafton Real Property*

On August 13, 1992, the debtor paid the full purchase price of the Grafton property and instructed the seller to put title to the property in the name of his son, Guy Cunningham. Since the property was purchased in 1992 the debtor has: (1) resided at the Grafton property with his son's full knowledge; (2) paid all property insurance premiums; (3) paid all related real estate and property taxes;

11

(4) leased the property to third parties; (5) collected all rental income from such leases; and (6) submitted all Current Agricultural Use Valuation applications in connection with the property.  Further, neither Guy, nor Ann Cunningham, has ever claimed the property as an asset.  Although the transfer is presumed to be a gift since the property was conveyed to the debtor's son, the debtor's conduct is sufficient to overcome the presumption.  *See In re Clemens*, 472 F.2d at 944 (resulting trust imposed and presumption of gift rebutted where mother paid full purchase price, lived in house, reported income from the property on her tax returns, and paid all real estate taxes and property insurance); *In re Valente*, 360 F.3d 256, 263 (1st Cir. 2004) (resulting trust imposed and presumption of gift rebutted where father paid full purchase price, lived in house with son's knowledge, paid all bills, leased the property to third parties, and did not pay rent). The debtor's post-purchase behavior evidences the debtor's intent to retain equitable ownership of the property; thus, giving rise to a resulting trust for the benefit of the estate.

Two months after the property was purchased, on October 15, 1992, Guy Cunningham transferred the property to the debtor pursuant to a warranty deed. The property was then transferred back to Guy on December 6, 1993.  The debtor argues that the post-purchase transfer was a repudiation of the trust by Guy

Cunningham; thus, triggering the ten-year statute of limitations under O.R.C.

§ 2305.14, and making the trustee's claim time-barred. The statute of limitations

on a resulting trust begins to run only upon a repudiation of the trust by the

resulting trustee. *Imperato v. McMinn*, 406 F.3d 987, 990 (8th Cir. 2005) (finding

creditor's resulting trust claim was not time-barred because trustee had not

repudiated trust prior to filing of the complaint). The Court does not believe that

there is sufficient evidence to indicate that the resulting trustee, Guy Cunningham,

repudiated the trust at any time prior to the trustee's filing of the complaint. In

fact, Guy Cunningham continues to assert that the "debtor's rights in the Grafton

property will continue as long as the debtor lives." Guy's Stipulations, p. 2. This

assertion by Guy is inconsistent with the debtor's claim of repudiation. Thus, the

Court finds that the resulting trustee did not repudiate the trust, and the Chapter 7

trustee's claim is not time-barred.

The debtor also argues that any purchase-money resulting trust created by

the original property conveyance was terminated by the post-purchase transfer of

the property between the debtor and his son. According to the debtor, "the reason

for the transfer of the property in October 1992 was to protect defendant Guy

Cunningham from any potential liabilities that may arise from a Halloween party

that he was hosting at the property." Debtor's Trial Brief, p. 3. The debtor also

13

asserts that both parties intended to transfer the property back to Guy after the party. The Court does not believe that the post-purchase Halloween party transfer of the property between the two parties invalidates the resulting trust.

First, the equitable purpose for imposing a resulting trust would be easily thwarted if the transferor and the resulting trustee could keep the property out of the reach of creditors simply by passing the deed back and forth between them. Here, the debtor transferred the property back to his son on the same day that he filed for divorce from his wife, creditor Carol Cunningham. While arguably, the timing may be coincidental, is more likely evidence of the debtor's intent to keep the property away from his wife. "Where, as the [t]rustee alleges here, the transferor put property in the name of the transferee in order to avoid the transferor's creditors, courts will allow the creditors to enforce the trust." *In re Simpson,* 334 B.R. 298, 306 n.8 (Bankr. D. Mass. 2005); *see In re Valente,* 360 F.3d at 264 n.6 (1st Cir. 2004) (resulting trust imposed to defeat the debtor's attempt to defraud creditors).

Second, the post-purchase transfer does not change the debtor's original intention. The simple fact that the debtor and his son transferred the property between one another, without consideration, in order to escape liability from a Halloween party, does not defeat the overwhelming evidence that the debtor

14

intended to remain the beneficial owner of the property. In fact, this tends to lend additional support to the resulting trust theory, as it supports the argument that the debtor could ask for the property back from his son at any time. *See In re Bassett*, 221 B.R. 49, 54 (Bankr. D. Conn. 1998) ("a resulting trustee has an absolute duty to reconvey legal title to the beneficial owner upon demand").

The debtor also asserts that the trustee's resulting trust claim regarding the Grafton property should be barred on equitable waiver or estoppel grounds, due to creditor Carol Cunningham having litigated and lost a fraudulent transfer claim involving the same property in state court before the debtor filed his Chapter 7 bankruptcy case. The state court dismissed Carol Cunningham's fraudulent transfer claim as being time-barred. In addition, the debtor notes that the trustee's special counsel for this adversary proceeding represented creditor Carol Cunningham in the state court litigation. Although a resulting trust claim was not raised or litigated in the prior state court case, the debtor asserts that under claim preclusion principles Carol Cunningham would be barred from raising such a claim in her own action against the debtor. Moreover, based upon the Eighth Circuit's decision in *In re Marlar*, 267 F.3d 749 (8th Cir. 2001), the debtor asserts that Carol Cunningham should be barred from participating directly or indirectly in any funds the trustee recovers from his resulting trust claim regarding the Grafton property.

15

The Court rejects the debtor's equitable waiver and estoppel arguments for several reasons. First, under applicable Ohio claim and issue preclusion law,[4] the state court judgment against creditor Carol Cunningham does not affect the trustee's ability to pursue a resulting trust claim. With respect to claim preclusion, the trustee's action does not involve the same parties or their privies as the state court action. Therefore, at least one element is missing for claim preclusion to apply. *See In re Fordu*, 201 F.3d 693, 703-04 (6th Cir. 1999) (discussing elements for claim preclusion under Ohio law); *see also In re Marlar*, 267 F.3d at 753-54 (no privity between trustee and unsecured creditor even when attorney representing the trustee in the bankruptcy action is the same attorney that represented the creditor in the state action); *In re Troutman Enterprises,* Inc., No. 05-8051, 2007 WL 205640, at *7 n.8 (6th Cir. BAP Jan. 26, 2007) (finding no privity between trustee and creditor because "a bankruptcy trustee is not merely a successor in interest to particular creditors of the estate") (citing *Marlar* BAP decision affirmed by Eighth Circuit for support); *Hudgins v. Davidson*, 127 B.R. 6, 8 (E.D. Va. 1991) (no privity because creditor was acting in individual capacity and trustee acts on behalf of all creditors equally). Nor is this a situation like a fraudulent transfer

---

[4] *See Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 374 (1985) (federal court must give the same preclusive effect to a state court judgment to which the judgment is entitled under that state's preclusion law).

16

action under section 544(b), where the trustee must be able to identify a creditor with an existing claim both at the time of the transfer and at the time the petition was filed. *See In re Gabor*, 280 B.R. 149, 161 (Bankr. N.D. Ohio 2002). With respect to issue preclusion, in addition to the lack of privity, the resulting trust claim was never "actually and directly litigated in the prior action" and was never "passed upon and determined by a court of competent jurisdiction." *See In re Fordu*, 201 F.3d at 704 (discussing elements for issue preclusion under Ohio law); *see also Taylor v. Sturgell*, ___U.S.___, 128 S. Ct. 2161 (2008) (in determining preclusive effect of prior federal court judgment under federal common law, Court expressly disapproved theory of preclusion by "virtual representation"). In short, none of the exceptions to the rule against nonparty preclusion applies to the trustee in this adversary proceeding.

As for the issue of whether Carol Cunningham should be barred from participating directly or indirectly in any funds the trustee recovers from his resulting trust claim regarding the Grafton property, the Court need not and cannot decide the issue at this time. Carol Cunningham is not a party to this adversary proceeding. Thus, any such determination would have to be litigated and decided in some other context, such as an objection to claim or a proceeding for equitable subordination under section 510(c). Accordingly, the Court expresses no opinion

as to the merits of the debtor's argument on this issue, which is not properly before the Court.

For the reasons stated above, the Court finds that: (1) the debtor holds equitable title to the Grafton property under a purchase-money resulting trust; (2) the subsequent transfer of the property between the two defendants is merely evidence supporting the Court's conclusion that the debtor intended to retain equitable title to the property; and (3) the Grafton property is part of the bankrupt estate for the benefit of creditors, and is subject to administration by the trustee.

*B. 2005 Dodge Truck*

The trustee also asserts that the 2005 Dodge truck is subject to a resulting trust for the benefit of the estate. As explained *infra* the Court finds that the transfer of a one-half ownership interest in the Dodge truck to defendant Wyman is a fraudulent conveyance subject to avoidance by the trustee under 11 U.S.C. §§ 544 and 548. Thus, the Court need not decide the more difficult issue of whether a motor vehicle may be subject to a resulting trust in the face of O.R.C. § 4505.04, Ohio certificate of title law. *Compare In re Case's Estate*, 118 N.E.2d 836, 839 (Ohio 1954) (holding that statutory provisions of Ohio's certificate of title law abrogate the common law of resulting trust in Ohio with respect to motor vehicles), *with United States v. Birns*, 395 F.2d 943, 947 (6th Cir. 1968) (holding

18

that Ohio certificate of title law does not prohibit imposing a constructive trust on a motor vehicle).

*Fraudulent Transfer: Counts II, III, and IV*

*A. FirstMerit Checking Account*

The Chapter 7 trustee argues that the debtor's deposits into a bank account opened by the debtor in the name of his son, Guy Cunningham, are fraudulent transfers subject to avoidance under the Bankruptcy Code. Regardless of whether the trustee is asserting his right under the "strong arm" provision in 11 U.S.C. § 544, or under the fraudulent transfer provision in 11 U.S.C. § 548, in order for the trustee to have the power to avoid a transfer, an actual transfer of property is required. *See* 11 U.S.C. § 544(a) ("The trustee . . . may avoid any *transfer* of property of the debtor . . .") (italics added); 11 U.S.C. § 548(a)(1) ("The trustee may avoid any *transfer* . . .") (italics added).

On January 24, 1995, the debtor opened a checking account in the name of Guy Cunningham. On August 23, 2006, a check in the amount of $46,000 was drawn on the account payable to "cash," and was endorsed and negotiated by the debtor. Defendant Guy Cunningham claims that he had no knowledge that a checking account was opened in his name until after the money was withdrawn by the debtor. The trustee has failed to present sufficient evidence of a transfer of

19

property from the debtor to Guy Cunningham.  Instead, the record indicates that the debtor diverted money to the checking account without his son's knowledge, and then withdrew this money from the account two months prior to filing for bankruptcy.  Although, this may well be evidence of the debtor's bad faith, it is not sufficient evidence of a transfer for avoidance under either section 544 or 548.

## B.  2005 Dodge Truck

The trustee asserts that the debtor's transfer of an undivided one-half interest in a 2005 Dodge truck to his brother, Gordon Wyman, is a fraudulent transfer subject to avoidance under 11 U.S.C. §§ 544 and 548.  Section 544 of the Bankruptcy Code provides in pertinent part:

> (b) (1) . . . [T]he trustee may avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of [Title 11] . . . .

11 U.S.C. § 544(b)(1).  "[T]he section 544 'strong-arm' provision of the Code allows the trustee to 'step into the shoes' of a creditor in order to nullify transfers voidable under state fraudulent conveyance acts for the benefit of all creditors." *In re Fordu*, 201 F.3d at 698 n.3 (citing *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887 (6th Cir. 1989)).  Under Ohio law the trustee may avoid a transfer if the debtor did not receive a "reasonably equivalent value in exchange for the transfer" and "the debtor was insolvent."  O.R.C. § 1336.05.  Once a fraudulent

20

transfer is made, a trustee in bankruptcy generally must bring a claim within four years of the transfer. *See* O.R.C § 1336.09.

The requirements under 11 U.S.C. § 548 are virtually the same as under Ohio law. Section 548 provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property . . . if the debtor voluntarily or involuntarily –
> . . . .
> > (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
> > (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred . . . .

11 U.S.C. § 548(a)(1). *See also BFP v. Resolution Trust Corp.*, 511 U.S. 531, 535 (1994). However, in contrast to Ohio law, under section 548 the trustee may only avoid a transfer made during the two years prior to the filing of the petition. *See* 11 U.S.C. § 548(a)(1).

On April 13, 2006, approximately six months[5] before the debtor filed for bankruptcy, a 2005 Dodge Ram was purchased for $24,781.75 from the Strongsville Dodge dealership. The truck was purchased with a $12,000.00 credit for the trade-in of a 1998 Chevy Silverado, and a check for the balance in the amount of $12,781.75. The $12,781.75 check was drawn on the debtor's

---

[5] Because the alleged transfer occurred only six months before the debtor filed his bankruptcy petition, the claim falls within the statute of limitations in O.R.C § 1336.09 and 11 U.S.C. § 548.

21

FirstMerit checking account. The debtor asserts that he sold the 1998 Chevy trade-in vehicle to his brother, Gordon Wyman, for valid consideration prior to the purchase of the Dodge. Thus, the debtor argues that he and his brother each provided equal consideration for the purchase of the Dodge truck. The debtor's brother signed the purchase contract for the truck, and title to the truck was placed in Gordon's name. The debtor and his brother have stipulated that they each own an undivided one-half interest in the 2005 Dodge truck.

Regardless of whether this question is analyzed under Ohio law by way of section 544, or under section 548, the same three elements are at issue before the Court: (1) whether Gordon Wyman's one-half interest was a transfer of "an interest of the debtor in property," (2) whether the debtor received "less than a reasonably equivalent value in exchange for such transfer," and (3) whether the debtor was insolvent at the time of transfer. After a review of the record the Court finds that the trustee has established all three elements by a preponderance of the evidence.

First, the debtor states that the 1998 Chevy belonged to his brother at the time the Dodge was purchased. Thus, the debtor argues that his brother provided $12,000 in consideration for the purchase of the Dodge. The debtor asserts that he sold the 1998 Chevy to his brother for valuable consideration, but has not presented sufficient evidence to support that assertion. The only document on file

with the Court regarding ownership of the 1998 Chevy is a vehicle registration card issued on February 1, 2006, in the name of the debtor. There is nothing in the record showing that the Chevy truck was ever transferred from the debtor to Gordon Wyman. The Court finds that the 1998 Chevy was property of the debtor at the time of trade-in, and that the debtor paid the full purchase price for the 2005 Dodge. Consequently, the one-half interest transferred to Gordon Wyman was a transfer of "an interest of the debtor in property."

Second, there was a complete lack of consideration from Wyman. There is no documentary evidence that defendant Wyman provided any consideration for the purchase of the Dodge truck. Therefore, the debtor received "less than a reasonably equivalent value in exchange for such transfer."

Finally, the Court finds that the debtor was insolvent at the time of transfer under the requirements of both Ohio law and section 548. "Under Ohio law, a debtor is insolvent if she is insolvent on a balance-sheet basis ( *i.e.*, her assets exceed her liabilities at a fair valuation) or if she generally is not paying her debts as they become due." *In re Stanley*, 384 B.R. 788, 806 (Bankr. S.D. Ohio 2008); *see also In re Gabor*, 280 B.R. at 155-61 (analyzing elements and burden of proof for fraudulent conveyance actions under section 548 and Ohio law). However, where there is a complete "lack of consideration," insolvency is presumed, and the

23

debtor-defendant has the burden of proving solvency at the time of the transfer. *Compare Oliver v. Moore*, 23 Ohio St. 473, 480 (1872) (burden of showing solvency rests upon the defendant), *and In re Poole*, 15 B.R. 422, 428 (Bankr. N.D. Ohio 1981) (applying *Oliver v. Moore* to Ohio Fraudulent Conveyance Act), *with In re Stanley*, 384 B.R. at 806 (where a case does not involve a complete "lack of consideration," the trustee has the burden of proving insolvency).

The debtor did not receive any consideration from Wyman for the one-half interest in the Dodge truck, thus the burden is arguably on the debtor to show that he was solvent at the time of the transfer to Wyman. However, regardless of who bears the burden of proof, the Court finds that the trustee has provided sufficient evidence of the debtor's *insolvency* at the time of the transfer (*i.e.,* inability to pay debts as they become due). For example, according to the debtor's own Statement of Financial Affairs, at the time of transfer, the debtor's wages were being garnished to pay a debt owed to creditor Carol Cunningham. Thus, the Court finds that the debtor was insolvent at the time of transfer pursuant to Ohio law.

A similar "balance sheet" calculation for insolvency is used under section 548. An individual is considered "insolvent" where "the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). Any "property transferred, concealed, or removed with

24

intent to hinder, delay, or defraud such entity's creditors" is excluded from the balance sheet calculation. *Id*. Further, "assets should be reduced by the value of the assets not readily susceptible to liquidation and the payment of debts." *Briden v. Foley*, 776 F.2d 379, 382 (1st Cir. 1985); *see 5 Collier on Bankruptcy* (15th Ed. Rev.) at ¶548.05(1)(a). The debtor's schedules list $86,470.00 in assets and $108,350.00 in liabilities. Therefore, at the time of filing, the debtor was insolvent under the balance sheet test, because his liabilities exceeded his assets. Although the transfer took place six months prior to the date the debtor filed his bankruptcy petition, it is unlikely that the debtor's assets and liabilities would have significantly changed during that six month period.

Earlier in this opinion, the Court determined that real property located in Grafton, Ohio, is property of the estate subject to a resulting trust, and has always been property of the estate subject to 11 U.S.C. § 541. Regardless, of the value of this property, the property does not effect the balance sheet calculation because it is excluded for two reasons. First, there is evidence that this property was "concealed with the intent to defraud creditors." 11 U.S.C. § 101(32)(A). For example, the Grafton property was transferred by the debtor to his son on the same day that the debtor filed for divorce from his wife, creditor Carol Cunningham. Second, because the deed to the property was in the name of the debtor's son, the property

25

was not "readily susceptible to liquidation and the payment of debts." Therefore, even though the Grafton property was property of the debtor at the time of the Dodge transfer, the balance sheet calculation is not affected, and the Court finds that the debtor was insolvent pursuant to section 548.

For the reasons stated above, the Court finds: (1) the transfer of a one-half interest in a 2005 Dodge truck to defendant Gordon Wyman's was a transfer of "an interest of the debtor in property," (2) the debtor received "less than a reasonably equivalent value in exchange for such transfer," and (3) the debtor was insolvent at the time of transfer. Thus, the Court finds that Wyman's interest in the 2005 Dodge is subject to avoidance by the trustee pursuant to 11 U.S.C. §§ 544 and 548.

*Denial of Discharge: Counts VII and VIII*

The Chapter 7 trustee seeks a denial of the debtor's discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A). Section 727 provides in pertinent part:

> (a) The court shall grant the debtor a discharge, unless—
> . . . .
>      (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred . . .
>           (A) property of the debtor, within one year before the date of the filing of the petition; or
>           (B) property of the estate, after the date of the filing of the petition;
> . . . .
>      (4) the debtor knowingly and fraudulently, in or in connection

26

with the case–
        (A) made a false oath or account . . . .

The debtor received a Chapter 7 discharge on January 29, 2007.  The plaintiff filed this adversary complaint on April 3, 2007.  While § 727(a) provides a basis to deny the granting of a debtor's discharge, it has no application to the present case, in which the defendant received his discharge before this adversary complaint was filed. *Cf.* 11 U.S.C. § 727(d) (listing grounds for revocation of discharge).  Therefore, the trustee's request for denial of discharge pursuant to 11 U.S.C. § 727(a)(2) and (a)(4)(A) is denied.

*Authority to Sell: Count IX*

Finally, the Chapter 7 trustee seeks authority to sell the debtor's Grafton property and Dodge truck pursuant to 11 U.S.C. § 363.  Section 363 states in pertinent part:

        (b) (1) The trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . .

11 U.S.C. § 363(b)(1).

The trustee is authorized to sell the Grafton property pursuant to 11 U.S.C. § 363(b).  The title owner, Guy Cunningham, has disavowed any interest in the property.   The Court has determined that the property is property of the estate under a resulting trust (see analysis above).  None of the defendants has asserted a

27

lien on the property.   Therefore, the trustee's request for authority to sell the Grafton property is granted.

The trustee is also authorized to sell the Dodge truck.  Although legal title to the truck is in the name of Gordon Wyman, the transfer of title is void as a fraudulent transfer pursuant to 11 U.S.C. §§ 544 and 548 (see analysis above). Therefore, the truck is property of the debtor's estate.  There are no liens on the truck.  Thus, the trustee is also authorized to sell the truck pursuant to 11 U.S.C. § 363(b).

## CONCLUSION

For the reasons stated above, the Court finds: (1) a purchase-money resulting trust in favor of the debtor has been established with respect to the Grafton property; (2) the debtor's transfer of interest in a 2005 Dodge truck to defendant Gordon Wyman is a fraudulent conveyance subject to avoidance by the trustee; (3) the trustee's requests for denial of discharge are denied; (4) the Grafton property and Dodge truck are property of the bankrupt estate and are subject to administration by the Chapter 7 trustee; and (5) the trustee's request for authority to sell the Grafton property and Dodge truck is granted pursuant to 11 U.S.C. § 363(b).

IT IS SO ORDERED.